**268 A.2d 820.**

SHIPYARD DRIVE-IN-THEATRE, INC. *et al. vs.*
JOSEPH C. SCUNCIO *et al.*

AUGUST 18, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This civil action was commenced by the filing of a complaint in the Superior Court as authorized by Super. R. Civ. P. 3. It was heard by a Superior Court justice who concluded that, although by the first prayer which called for injunctive relief the complaint was in the nature of a bill in equity, plaintiffs, when all other prayers were considered, were actually seeking a declaratory judgment as authorized by P. L. 1959, chap. 90, sec. 1, now G. L. 1956, chap. 30 of title 9, as amended. Neither in their oral arguments nor briefs have the parties raised any question regarding the posture of the litigation as interpreted by the Superior Court justice. Consequent-

ly, our consideration of the appeal taken by plaintiffs from the judgment entered in the Superior Court likewise assumes the complaint filed to be in fact a petition for declaratory judgment.

From their thus postured complaint, it appears that all plaintiffs are motion picture operators regularly exhibiting films in the City of Providence. All save one conduct their exhibitions in regular moving picture theatres or houses. The exception is the Shipyard Drive-In-Theatre, Inc., which operates out-of-doors, and consequently lacks in-door facilities for the showing of moving pictures in the daytime. The significance of this will be subsequently made to appear.

The first three named defendants constitute the Bureau of Licenses of the City of Providence, while the remaining defendants are respectively the chief of police of said city and a lieutenant in the Providence Police Department assigned to the Bureau of Licenses to serve as amusement inspector for the city. It is in these various capacities that all were made party defendants.

The second paragraph of G. L. 1956, §5-22-5, as amended by P. L. 1966, chap. 260, sec. 1, provides that the appropriate licensing authority may require a license for "each particular performance, show or exhibition but may deny any such license only upon the ground that the said performance, show, or exhibition is obscene." See appendix I.

Said section 5 further provides, in essence, that an application for a license to show a particular motion picture shall be favorably acted upon within 48 hours of the application therefor, unless, in the opinion of the Board, the particular picture to be shown is obscene. Having determined that for this reason the license should not be granted, it is encumbent on the licensing authority to file a complaint in the Superior Court for the counties of Prov-

idence and Bristol, praying that the picture in question be adjudged obscene and the applicant permanently enjoined from showing the picture in question. The section then goes on to establish standards whereby a prompt judicial determination may be had. See appendix I.

Section 5-22-8, as amended by P. L. 1964, chap. 182, sec. 1, provides in pertinent part for the licensing after 1 p.m. on Sunday of moving pictures which "have the approval of the national board of review and the licensing body * * *."

Section 5-22-12, authorizes the local licensing authority to provide for the payment of a licensing fee, which fee, however, may not exceed $100 for any single performance.

Pursuant to the authority thus conferred, the Providence City Council amended the city's licensing ordinance in aid of enforcing the enabling legislation. The relevant provisions of the amended ordinance are contained in chapter 1840 enacted March 20, 1967, and chapter 1883 enacted November 24, 1967.

Chapter 1840, in essence, provides for a licensing fee for the exhibition of motion pictures of $2 for each secular day and $5 on Sunday. See appendix II.

Chapter 1883, in part, restates the power to license conferred by §5-22-4. See appendix III. Said chapter 1883 (see appendix IV) further provides definitive standards for the enforcement of §5-22-5, as amended. There is included among such standards a definition of obscenity for the guidance of the Providence Licensing Bureau. Although set forth in sec. 4 of chap. 1883 (appendix IV) we deem it advisable at this juncture to set out the obscenity standard.

> "Said determination of probable cause of obscenity shall be based upon whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole ap-

peals to the prurient interest and has no social redeeming value."

Pursuant to the authority conferred by the aforecited sections of chap. 22 of title 5, and the cited ordinance provisions enacted in accordance therewith, the Providence Bureau of Licenses adopted certain regulations procedurally designed to carry out its legislated function. These regulations are, in all significant particulars, a restatement of the provisions relating to the showing of motion pictures as set forth in chaps. 1840 and 1883 of the city ordinance, appendixes II and IV respectively.

The plaintiffs' complaint is premised on the proposition that the showing of motion pictures partakes of the exercise of free speech, hence protected by the first article of amendments to the Constitution of the United States, citing *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495, 72 S.Ct. 777, 96 L.Ed. 1098. Continuing, the complaint alleges that defendants' enforcement of the cited provisions of the enabling act, city ordinance and bureau regulations so harasses plaintiffs in their efforts to exhibit motion pictures as to constitute an unwarranted interference with a right guaranteed to them by the first article of the Bill of Rights of the Federal Constitution, made binding on the states and their political subdivisions by article XIV of the amendments to the Federal Constitution.

In consequence, the complaint prays, first, that defendants "be temporarily and permanently restrained and enjoined from interfering with the exhibition of motion picture films at plaintiffs' theatres and from arresting or prosecuting any of said plaintiffs' officers and employees or agents on the grounds that motion picture films are being exhibited without a license issued by the defendant bureau."

In passing on the complaint after the parties had rested, the Superior Court justice noted that, by their first prayer,

plaintiffs appeared to be asking for injunctive relief against prosecution under a criminal statute; relief not ordinarily available. However, since by their remaining prayers, they were clearly asking for relief accorded under the Uniform Declaratory Judgment Act, whereby injunctive relief could not be had, at least in the first instance, the Superior Court justice concluded that since relief must be denied under either theory, it was not necessary that he consider whether the case made out by plaintiffs fell within those exceptional circumstances whereby equity might enjoin prosecution under a criminal statute. See 18 Am. Jur., *Injunction,* §§239-240. Since the judgment sought looks to the future, and does not seek redress for alleged past wrongs, we likewise perceive no compelling reason to consider plaintiffs' prayer for injunctive relief other than that implicit in this opinion.

The remaining prayers are, in essence, that with regard to the licensing of motion picture exhibitions, secs. 4 and 12, and secs. 5 and 8, as amended, of chap. 22 of title 5, be declared violative of plaintiffs' right of free speech as guaranteed by article I of amendments to the Constitution of the United States; that the applicable provisions of chaps. 1840 and 1883 of the revised ordinances of the Providence city ordinance be similarly declared invalid, and further that said ordinance provisions be declared unlawful in that they are in excess of the authority conferred by the enabling act and, finally, that the regulations adopted by the Providence Bureau of Licenses be declared to be constitutionally defective or, in the alternative, that they exceed the authority delegated to the city by the General Assembly.

The relevant facts on which plaintiffs predicate their claim for relief are not in substantial conflict. They are that, acting in accordance with the applicable city ordinance, an applicant for a license to exhibit motion pic-

tures is required to pay $2 for each secular day and $5 for Sunday; that separate applications must be filed for Sunday and weekday exhibitions; that an application for a license will not be processed by the Bureau unless the particular film for the showing of which a particular license is sought, is available for showing at the time the application is filed; that on receipt of an application it is forwarded to the amusement inspector of the police department for investigation; that if the report of the amusement inspector raises no obscenity controversy, the license is automatically granted; that if the report raises such question, the picture is then reviewed by the Bureau members and if in their judgment the picture proposed to be shown is probably obscene, the question is referred to the city law department to initiate judicial proceedings as set forth in §5-22-5, as amended (appendix I) and chapter 1883 (appendix IV).

The facts further establish that when considering an application the Bureau concludes that the particular motion picture in question should be reviewed, the Bureau insists that the preview be held sometime between 10 a.m. and 4 p.m.; that all fees collected by the Bureau go into the city's general fund; that in 1967 the city's appropriation for the use by the Bureau was $48,150.33; that the amount of fees collected in the same year for the licensing of motion pictures was $9,724 and that, in the uncontradicted estimate of the Bureau's chairman, one-fourth of the time of the Bureau and its personnel was dedicated to the processing of motion picture applications.[1]

---

[1]Although in their oral argument and brief, as we understand them, plaintiffs seem to argue as though applications for a license must be made day by day for a showing of the same motion picture, nothing in either answers to interrogatories or testimony adduced in the Superior Court indicate this to be the fact. There being nothing in the record to establish this as a practice of the Bureau, we conclude that plaintiffs' contention in this regard is without merit.

On the basis of the facts thus set forth, the Superior Court justice denied relief and declared the applicable provisions of the enabling act, as well as the city ordinance to be constitutionally sound, and further declared that the Bureau's regulations adopted pursuant to the act and the ordinance, as well as the practices of the Bureau in carrying out said act, ordinance and regulation, to be lawful and comformable to a valid delegation of the legislative power conferred on the Bureau.

In support of their position that the decision of the Superior Court justice and the judgment accordingly entered are contrary to law, plaintiffs advance several contentions. We will consider these seriatim.

## I

Alleged Unconstitutionality of the Enabling Act

Rooted in every contention made by plaintiffs is the proposition that the showing of motion pictures is cloaked with the constitutional guarantees of the right of free speech and press mandated by article I of amendments to the Constitution of the United States. In *Burstyn, supra,* the United States Supreme Court, expressly departing from the principles enunciated in *Mutual Film Corp.* v. *Ohio Industrial Comm'n,* 236 U. S. 230, 35 S.Ct. 387, 59 L.Ed. 552, held that expression by means of motion pictures is included within the free speech and free press guarantee of the first and fourteenth amendments to the Federal Constitution. Consequently, in *Burstyn,* the court struck down as being violative of the first amendment guarantee, a New York statute which, authorizing the licensing of motion pictures also provided for the denial of a license when, in the opinion of the designated censor, a particular motion picture for the showing of which a license is sought is "obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition

would tend to corrupt morals or incite to crime * * *." McKinney's N. Y. Laws, 1947, *Education Law*, §122.

The basis for the action of the censor in the *Burstyn* case was that the picture was "sacrilegious" and the court, in addition to holding that the exhibition of motion pictures was a liberty protected by the first amendment and applicable to the states through the fourteenth, faulted the statute on the specific ground that "sacrilegious" not otherwise defined was an imprecise constitutional standard. The court saw no necessity to pass on the question of whether prior restraint would be valid if exercised by the licensing authority pursuant to constitutionally permissible control.

Indeed, in *Burstyn*, the court was careful to point out that the case did not stand for the proposition that the states could not censor motion pictures under a clearly drawn statute designed *and applied* to prevent the showing of obscene films. (Emphasis ours.) Specifically, it held that under the first and fourteenth amendments a state may not ban a film on the basis of a censor's conclusion that it is sacrilegious.

The instant plaintiffs argue that §5-22-5, as amended, is similarly unconstitutional on its face in that the standard of "Obscene", on which the Providence Bureau of Licenses purports to exercise prior restraint, lacks constitutional sanction. In this they equate the undefined "sacrilegious" standard of the New York act with the undefined standard of "obscene" as set forth in the Rhode Island enabling act.

If the instant proceedings were addressed to a review of the Licensing Bureau's banning of a given motion picture on the ground that in the unstandardized opinion of the Bureau the picture in question was obscene, we would have no alternative but to hold such banning was a violation of the freedom of speech and press guarantees. This,

however, is not the case. We agree that in exercising its delegated legislative power to withhold a license for the reason that the motion picture proposed to be shown is obscene, the Bureau of Licenses is bound to make that determination in accordance with constitutionally valid standards of obscenity. Consequently, although §5-22-5, as amended, may purport to be a valid exercise of the police power, in failing to set forth acceptable obscenity standards, it is susceptible to an unconstitutional application of the police power when, in a given case, it appears that the licensing authority, acting pursuant to the authority conferred by the section is demonstrably motivated by applying standards which constitute a denial of due process. See *State ex rel.* v. *Lombardi,* 104 R. I. 28, 241 A.2d 625.

Inevitably, this brings us to a consideration of what is the obscenity standard binding on the licensing authority in exercising the power delegated under §5-22-5, as amended.

It is the unequivocal and uncontradicted testimony of the chairman of the Bureau of Licenses that in passing on an application for a motion picture license, the members of the Bureau adhere to the standard set forth in the applicable Providence ordinance, namely sec. 4 of chap. 1883 (appendix IV). At the time this standard was incorporated in the amended ordinance, it had the approval of a majority of the United States Supreme Court in *Roth* v. *United States,* 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

However, since the holding in *Roth,* the Court has further restricted a censor's area of prior restraint. In *Memoirs* v. *Massachusetts,* 383 U. S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, a majority of the Court held that material was obscene in a constitutional sense only if three elements coalesce. These are:

"* * * (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Subsequently in *Redrup* v. *New York,* 386 U. S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515, the Court referring specifically to the divergent views of the individual justices, made clear that the test enunciated in *Memoirs* represents the outside limits of constitutionally sanctioned prior restraint.[2]

It is our judgment therefore, that the withholding of a motion picture license and the referring of the question to the Superior Court as authorized by §5-22-5, as amended, has validity only when the licensing authority's determination conforms to the standards set forth in *Memoirs.*

The plaintiffs further contend, however, that §5-22-5, as amended, is also unconstitutional in that it purports to authorize prior restraint contrary to the holding in *Freedman* v. *Maryland,* 380 U. S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. In making this contention, they have regard to those provisions of said section which authorize the licensing authority to take up to 48 hours in either granting the license, or denying it on obscenity grounds and referring it to the Superior Court for judicial determination (paragraph 2 of appendix I).

In *Freedman,* the Court expressly held that, to be free of constitutional prohibitions, a state statute must conform to certain specified minimum requirements. These are, in essence, that the burden of proving obscenity is statutorily placed on the censor; that the finality of the obscenity controversy may not rest with the censoring li-

---

[2]For an illuminating review of the obscenity quandry, see *In re Seven Magazines,* 107 R. I. 540, 268 A.2d 707.

censing authority but rather in a judicial determination, adversary in nature, and that the statute under which prior restraint is authorized must expressly provide for a prompt submission of the controversy to the courts as well as an expeditious final adjudication thereof.

We are unable to agree with plaintiffs' contention that §5-22-5, as amended (appendix I), falls short or otherwise fails to conform with the minimum procedural protection laid down in *Freedman*. An examination of the act in question discloses that the appropriate agency must within 48 hours either grant the license applied for or initiate proceedings in the Superior Court for a judicial determination of the agency's concern regarding obscenity and that the burden of proving obscenity rests with the licensing agency. The statute further provides that should the licensing authority file a complaint in lieu of issuing a license, the applicant for said license shall be informed thereof "forthwith" and the case heard the day following the filing of pleadings by defendant and the judgment of the court rendered within 48 hours of the conclusion of said hearing. Moreover, the statute expressly provides that should either the complaining agency or the court fail to strictly comply with the provisions designed to assure the defendant-applicant of a prompt judicial determination, the license applied for shall be issued forthwith.

Nevertheless, plaintiffs argue, Super. R. Civ. P. may be invoked to prolong the judicial proceedings substantially beyond the few days provided for in the statute. On this point, we think it sufficient to observe that, as to the commencement of the judicial hearing, the statute leaves to defendant-applicant the decision as to when the hearing shall commence. In all other respects, the statute contemplates that delay attributable to the complaining agency or the court would result in the granting of the license

by way of mandamus, absent some mitigating circumstance as might appear in an appropriate case.

It seems to us that if the formula enunciated in *Freedman* v. *Maryland, supra,* has any realistic value, the General Assembly of this state in adopting P. L. 1966, chap. 260, sec. 1, now §5-22-5, as amended, pragmatically safeguarded the right of a motion picture exhibitor against unwarranted prior restraint.

Continuing their assaults on the General Assembly's asserted right to regulate the showing of motion pictures, plaintiffs next argue that §5-22-8, as amended by P. L. 1964, chap. 182, sec. 1, is unconstitutional on its face. This section provides:

> "Performances and movies after 1 p.m. on Sunday. —The bureau of licenses of the city of Providence, the police commissioners of the city of Woonsocket, the town council of the town of Burrillville, the town council of the town of West Warwick and the city council or other licensing board of the cities of Central Falls, Cranston, Pawtucket and Newport, may authorize the performance for pay or profit of vocal, instrumental or orchestral entertainments and lectures of an instructive character, plays or legitimate theater performances, and vaudeville performances of juggling and stage dancing having the approval of the licensing body of the city where such performances are given, and moving picture exhibitions, consisting of such pictures as have the approval of the national board of review and the licensing body of the city where such pictures are to be shown, on the first day of the week after the hour of 1 p. m. but no such license shall authorize the vending or serving of any foods or refreshments of any kind or nature on the first day of the week."

In essence, they challenge the validity of the foregoing section on two grounds. First, they contend that by purporting to authorize the requirement of separate licenses for secular days and Sunday, the General Assembly has

exceeded whatever authority it may have with regard to prior restraint in that whatever constitutes a guaranteed expression of free speech on weekdays is equally applicable to Sundays, citing *Brattle Films, Inc.* v. *Commissioner of Public Safety,* 333 Mass. 58, 127 N. E. 2d 891. There the Massachusetts court struck down a Sunday licensing statute on the ground that the act in question, Mass. G. L. (Ter. Ed.) c. 136, §4, as amended, permitted the showing on Sunday of only such pictures as the Commissioner of Public Safety approved as being in keeping with the character of the day and not inconsistent with its due observance. Such censorship, the court held, in essence, constituted an unwarranted prior restraint on the freedom of speech and press, citing *Burstyn* v. *Wilson, supra.*

Similarly here, the requirement of §5-22-8, as amended, that only such motion pictures as meet with the approval of the National Board of Review, is without constitutional sanction. The standard binding on the licensing authority when purporting to exercise prior restraint is no different with regard to the issuance of a Sunday license than that for secular days, namely, the three elements and coalescence thereof enunciated in *Memoirs* v. *Massachusetts.*

To the extent then that §5-22-8, as amended, seems to call for separate licenses vis-à-vis Sundays and secular days, §5-22-8, as amended, is defective. However, we read the section as authorizing the licensing of motion pictures along with other stated exhibitions on Sundays as well as secular days, restricting the commencement thereof to 1 p.m. The plaintiffs argue, however, and the evidence adduced in the Superior Court tends to support them, that, if an exhibitor applying for a license for a period of several days or weeks, within which a Sunday or Sundays are included, separate applications must be made therefor. If such be the case, support for such practice lacks constitutional validity. In short, if an exhibitor is inter-

ested in only showing on a Sunday, the licensing authority is authorized by §5-22-8, as amended, to issue the license requested and under §5-22-5, as amended, may deny such license only on the ground that the picture sought to be shown is obscene in a constitutional sense. If, however, a license is sought for a specified number of days or weeks which encompasses a Sunday or Sundays, there can be but a single exercise of prior restraint in the determination of whether the license requested for the time involved may be constitutionally denied. In the latter instance, we assume that the license sought is for the same motion picture and in both instances, we assume that the place where the film is to be exhibited has been approved as required by §5-22-13.[3]

Finally, as to the alleged unconstitutionality of the enabling act, plaintiffs argue that §5-22-12 is similarly invalid on its face in that it purports through the authorization of license fees, to impose a tax on the exercise of free speech and press, contrary to the holding of the United

---

[3]This section provides:

"Building inspection as prerequisite to license.—A license shall not be issued under the provisions of §§5-22-4 to 5-22-12, inclusive, until the building to be used for the show for which such license is desired, together with the apparatus if a motion picture show is to be licensed, has been inspected by the inspector of buildings appointed as provided in §23-30-3, and such inspector has filed with the licensing authorities a certificate in writing showing that such building or apparatus meets, in all respects, the requirements of chapters 29, 30, and 35 of title 23, and is otherwise safe to use for the purpose for which such license is desired and until such building has also been inspected by the chief of the respective fire department or his assistants who shall also file with the licensing authorities a certificate in writing showing that such building or apparatus meets, in all respects, the requirements of the general and public laws of this state for the protection of life and property against the menace of fire. If such building or apparatus does not meet such requirements or is otherwise unsafe then no such license shall be issued, and if any license is so issued such license shall be void. Any person managing or promoting a show, under any such void license shall upon conviction thereof suffer the penalty provided in §5-22-18."

States Supreme Court in *Murdock* v. *Pennsylvania,* 319 U. S. 105, 63 S.Ct. 870, 87 L.Ed. 1292.

Said §12 is entitled "License fees — Revocation of license." and provides:

> "Said town council, bureau of licenses or board of police commissioners, shall demand and receive of every person to whom a license shall be granted under this chapter such sum not exceeding one hundred dollars ($100) for any single performance, show, exhibition, concert, entertainment, moving picture exhibition, dance or ball, as they may deem proper; provided, that performances and entertainments given by religious and charitable societies and volunteer fire-fighting companies duly organized and incorporated for the purpose of furthering their religious, benevolent or fire-fighting work are hereby excepted from the provisions of this chapter as to fees; and provided, further, that any license granted under the authority of §§5-22-5 to 5-22-12, inclusive, may be revoked at the pleasure of said town council, bureau of licenses or board of police commissioners."

In *Murdock* a local ordinance provided for a graduated license fee chargeable to all persons engaged in door-to-door soliciting. The local licensing authority interpreted the ordinance as being applicable to members of a religious sect, Jehovah's Witnesses, who, in the exercise of their religion, went door to door distributing literature and soliciting people to purchase certain religious books and pamphlets. The Court held that, there being no relationship between the fee charged and the application of the revenue thus received to the protection of the public against the abuses of solicitors, the fee charged constituted a tax on the freedom of press and a restraint on the free exercise of religion. The Court was careful, however, to preserve the governmental right to impose license fees as a regulatory measure where the purpose of charging such fees was to defray the expense of policing the activity so

licensed, citing *Cox* v. *New Hampshire,* 312 U. S. 569, 61, S.Ct. 762, 85 L.Ed. 1049.

Here, §5-22-12, authorizes the local licensing agency to charge such fee as is proper. Moreover, the activities encompassed range from exhibitions where policing would be nominal to circuses and large sporting events. Thus, the General Assembly contemplated the fixing of fees by a local licensing agency ranging from nominal to the substantial limit of $100, leaving it for said local agency to fix a fee commensurate with the expense of policing a given exhibition. Hence, we cannot agree that, as to the provisions relating to licensing fees, §5-22-12 is patently defective. There is, however, the question of whether the licensing fees charged by defendant Bureau are merely a regulatory measure and valid, or from the evidence, can the fees charged be said to constitute a prohibited tax.

Turning to an examination of the evidence on this point, we find that the total revenue from the licensing of motion picture films in 1967, the last full year, was $9,724, while the cost of operating the Bureau as the same related to the licensing of motion pictures consumed approximately one-fourth of the Bureau's time and efforts. The total appropriation for the Bureau being $48,150.33, it is readily apparent that the fees charged for the licensing of motion pictures are nominal and amounting to something less than the revenue required to enforce the licensing procedures. On the state of the record therefore, it seems clear that the licensing charge is a permissible regulatory measure.

The further provision of said §12, that the local licensing authority may revoke a license already granted at its pleasure, however, constitutes a denial of procedural due process on its face, at least when, as here, this provision of the section is considered in connection with the licensing of motion pictures. Again, though the record before us does not disclose any instance where the faulted standard

was resorted to as against the instant plaintiffs, the record does disclose that defendant Bureau refused to renew a license for the showing of the picture "I A Woman", after that picture had been exhibited for some six weeks pursuant to licenses granted for that period.

The record further establishes that with the denial of a renewal of the license previously granted, defendant Bureau initiated judicial review in accordance with the requirements of both the enabling act and the ordinance. Parenthetically, it was the judgment of the Superior Court that the picture in question was not obscene within the meaning of constitutional standards and a license for the showing thereof was again granted by defendant Bureau.

However, the record does not indicate the basis for the Bureau's refusal to renew. If such denial was predicated on the Bureau's purported authority to revoke at its pleasure as set forth in §5-22-12, the Bureau's action was invalid since that provision of the enabling act is clearly violative of due process. Obviously, the granting of a license carries the implication that the picture for which the license was issued is not obscene. This is not to say, however, that a licensing authority lacks power to suspend a license when there comes to the authority's attention the fact that an altered version of the picture has been substituted for that which was approved and said altered version, tested by constitutional standards, raises an obscenity controversy. In such case the licensing authority has such jurisdiction as it would have if the substituted version were that for which a license was applied in the first instance.

With regard to that provision of §5-22-12 which purports to authorize the revocation of licenses at pleasure, we hold such provision is without constitutional sanction and that a license once issued may not be revoked, suspended, or renewal thereof denied, absent an abusive use of said license as heretofore indicated.

## II

Alleged Unconstitutionality of Chapters 1883 and 1840 of the City Ordinances, Appendixes IV and II Respectively Section 3 of chap. 1883 paraphrased, authorizes a prior showing of the film for which a license is sought and, to this end, requires application for such a license to be made at least 48 hours, Saturdays, Sundays, and legal holidays excluded, prior to the initial date on which the picture will be shown. Supplementary to this, said sec. 3 requires that the film be available for viewing by the Bureau at the time application for the license is made, and further authorizes the Bureau to refuse to act on an application unless at the time the application is filed the film in question is available for showing. In connection with plaintiffs' attack on this section of the ordinance, plaintiffs point to the testimony of the Bureau's chairman that it is the practice of the Bureau to faithfully adhere to the recited guidelines. Indeed, the record discloses that at least in one instance one of the plaintiffs was refused consideration of his application for the reason that he did not have the picture proposed to be shown available at the time of the filing of his application.

It is plaintiffs' first contention that the requirements established by sec. 3 are ultra vires of the General Assembly's grant of licensing power to the City of Providence. In support thereof they refer our attention to several cases where this court has stated that licensing power rests with the state and may be exercised by a municipality only to the extent authorized by an enabling act. *Atlantic Tubing and Rubber Co.* v. *City of Cranston,* 105 R. I. 584, 254 A.2d 92; *Nugent ex rel.* v. *City of East Providence,* 103 R. I. 518, 238 A.2d 758; *Newport Amusement Co.* v. *Maher,* 92 R. I. 51, 166 A.2d 216.

Nowhere in chap. 22 of title 5, as amended, plaintiffs point out, has the General Assembly expressly authorized

574

the several cities and towns, in exercising the police power delegated to them, to require a prior showing of the picture for which a license is sought.

While it is true as plaintiffs contend that the right to require a prior showing does not come to the municipalities by way of an expressed declaration, it is clear from the statutory delegation of authority to submit question of obscenity for judicial determination, the right of prior review is conferred by necessary implication. See *Newport Amusement Co.* v. *Maher, supra*, 92 R. I. 51 at 56, 166 A.2d 216 at 218. It is difficult to perceive how the Bureau could invoke a lawful right of prior restraint absent a preview of a picture regarding which there is a question of obscenity. Consequently, we conclude that the ordinance provision authorizing a prior showing is a General Assembly grant by necessary implication.

Even so, plaintiffs further contend, the coupling of the requirement that the film be available for showing at the time application is made for a license with the provision that an application for a license must be made not later than 48 hours prior to the first day on which the picture is to be shown, constitutes a patent harassment, and as such is violative of the first amendment liberty. This argument, standing alone, would not, in our judgment, demonstrate patent constitutional infringement. However, there is evidence in the record that a particular film for which a license is sought may not be released by the distributor until the day of its proposed first showing. Were this the rule rather than a very occasional exception, plaintiffs' contention of harassment might have merit.

It is apparent from the instant record, however, that plaintiffs' complaint in this regard is not supported by the experiences concerning which they testified. Their testimony in this regard is so vague and evasive as to leave one with the clear impression that what they complain

of is no more than an infrequent inconvenience such as must reasonably be expected to be encountered by anyone engaged in an enterprise that is properly susceptible to valid governmental regulation. In short, if the requirement complained of is a valid regulatory measure, infrequent inconvenience inevitably attaches.

Further challenging the validity of chap. 1840 of the city ordinances, plaintiffs contend that, assuming that a $2 license fee for weekday licenses is lawful, there is no justification for the increased fee of $5 for a Sunday license. We have earlier in the opinion held that if the amount of a fee assessed for a license does not constitute a tax but rather represents nothing more than an imposition of costs for the policing of a valid regulation, such fee is a regulatory measure and valid. Additionally, we found from the evidence in the instant record that the revenue received from the licensing of motion pictures was substantially less than that required to be expended by the Bureau in carrying out its regulatory functions. However, absent a showing by defendant Bureau that the cost of policing Sunday exhibitions is greater than that required for weekdays, a greater fee for Sunday licenses is without legal sanction. The instant record is barren of evidence in this regard and we consequently conclude that the ordinance requirement of a $5 fee for Sunday licenses can result in an unconstitutional application of what would otherwise be a valid regulatory enactment. Stated otherwise, this provision of the ordinance is defective if the license fee for Sunday is greater for no reason other than that the day in question is a Sunday.

Section 2 of chap. 1883, realistically read, limits the jurisdiction of defendant Bureau to the issuance of a weekday license for a week at a time. This, plaintiffs argue, is an obvious unwarranted harassment in that, if prior restraint is not warranted in the first instance, the period

of time for which an exhibitor wishes to show a film should rest exclusively with the exhibitor. We agree, assuming of course that there is no substituted version for the showing of which a license might have been validly denied in the first instance. In short then, notwithstanding the one-week limitation contained in sec. 2 of chap. 1883, defendant Bureau in granting a license has the obligation to issue it for such period of time as the applicant may request.

As noted at the outset of this opinion, plaintiffs' prayers for a declaratory judgment are premised on their allegations that the applicable sections of the enabling act and of the city ordinances are unconstitutional and that certain provisions of defendant Bureau's rules and regulations are arbitrary, unlawful and void. Inevitably in our discussion and resolution of the several contentions made regarding the alleged unconstitutionality of the enabling act and ordinances, we have considered and disposed of most of plaintiffs' contentions regarding defendant Bureau's rules and regulations, and the practices of the Bureau conducted in accordance therewith.

There remains, however, the requirement of defendant Bureau that pre-reviewing, when deemed necessary, be conducted between 10 a.m. and 4 p.m. This is a hardship, plaintiff Shipyard Drive-In-Theatre, Inc. alleges, because it operates only in the nighttime and its outdoor facilities are not available for previews in the daylight. Moreover, it further argues that defendant Bureau's time schedule has required it in the past to rent the indoor facilities of a theatre no longer available. In addition to this difficulty, plaintiff Shipyard argues that the expense of engaging indoor facilities is an unjustifiable burden. Here again is a complaint the gravamen of which is that a motion picture exhibitor is required to conform to the incidents of constitutionally valid regulations. It is an argument that has merit only if the regulatory measures taken by the licens-

ing authority are so arbitrary and otherwise unreasonable as to unnecessarily hinder an applicant for a license to publicly exhibit motion pictures at times and places chosen by him. On the state of the instant record, we cannot agree that the regulation complained of has been demonstrated to work an unwarranted hindrance.

Finally, we deem it advisable to repeat that the instant litigation does not raise for this court the question of redressing a previously inflicted wrong. Rather, it seeks declarations which look to the future and, so viewed, the Superior Court justice ordered the entry of a judgment which, holding that none of plaintiffs' contentions had merit, denied each and every prayer.

To the extent that the judgment entered in the Superior Court conforms to this opinion, said judgment is affirmed, but where otherwise in conflict with this opinion, said Superior Court judgment is reversed.

Motion to reargue denied.

## APPENDIX I

Local Licensing of Amusements — Prohibition of Obscene Shows and Performances.

\* \* \*

"Any town council, the board of police commissioners, or in the case of the city of Providence, the bureau of licenses, or any other licensing board or authority in any city or town may require a license for each particular performance, show or exhibition but may deny any such license only upon the ground that the said performance, show, or exhibition is obscene.

"In the event that any person, firm, corporation or association shall apply for a license for any particular performance, show or exhibition and the town council, the board of police commissioners or in the case of the city of Providence, the bureau of licenses, or any other licensing board or authority in any city or town to which said application is directed is of the opinion that the said license should not be granted on the ground that the said performance,

show or exhibition is obscene, the said town council, the board of police commissioners, or in the case of the city of Providence, the said bureau of licenses or the said licensing board or authority shall within forty-eight (48) hours of the filing of such application, either grant the license sought or commence a suit against the said person, firm, corporation or association in the superior court for Providence and Bristol counties by the filing of a complaint wherein shall be contained prayers that the said performance, show or exhibition be adjudged obscene and that the said person, firm, corporation or association be permanently enjoined from presenting or conducting it in the particular city or town. Forthwith upon the commencement of the said proceeding, the said person, firm, corporation or association shall be notified by the clerk of said court of its pendency. The said matter shall then be heard by a justice of the said court on the question of whether or not the said performance, show or exhibition is obscene within one (1) day of the joinder of issue, and the said justice shall render a decision within forty-eight (48) hours of the conclusion of said hearing. The superior court shall give preference to such cases over all other cases in said court except older cases of like nature, and such cases shall be assignable to any calendar in the said court. In determining the time periods heretofore set forth in this section Saturdays, Sundays and court holidays shall not be counted and the superior court shall not be required to hear such cases on said days. Throughout the said proceeding, the party initiating the same shall have the burden of proof, and if any of the provisions of this paragraph have not been strictly complied with either by the party initiating the proceeding or the court, the said license shall be issued forthwith."

## APPENDIX II

### Chapter 1840

An Ordinance Authorizing the City Council to Establish the Following Fees for the Issuance of Licenses by the Bureau of Licenses of the City of Providence:

Section 1. Fees:

\* \* \*

\* \* \*
\* \* \*

D. Motion pictures TWO ($2) DOLLARS per day; Sundays FIVE ($5) DOLLARS per day

\* \* \*

Section 2. Charges:

A. All charges and costs with respect to reviewing circuses, rodeos, traveling shows, special events, and other shows, performances and exhibitions, including motion pictures, shall be borne by the applicant.

## APPENDIX III
### Town License Required

No person shall publicly or for pay or for any profit or advantage to himself, exhibit or promote or take part in any theatrical performance, or rope or wire dancing or other show or performance, or conduct, engage in or promote any wrestling, boxing or sparring match or exhibition, nor shall any person for any pecuniary profit or advantage to himself, promote any public roller skating in rinks or halls, or give any dance or ball, without a license from the town council of the town in which such performance, show, exhibition, dance or ball is sought to be given.

## APPENDIX IV
### Chapter 1883

An Ordinance in Amendment of Chapter 19 of the Revised Ordinances of the City of Providence, 1946, Entitled "Licenses"

### Performances, Shows and Exhibitions

Section 1. No person, firm, corporation or association shall publicly, or for pay or for any profit or advantage to himself, exhibit or promote any theatrical performance, rope or wire dancing, or other show, performance, or exhibition, or conduct, engage in, or promote any wrestling, boxing, or sparring match, or exhibition, nor shall any person, firm, corporation or association for any pecuniary profit or advantage to himself promote any public roller skating in rinks or halls, or give any dance or ball with-

out first obtaining a license therefore from the Bureau of Licenses of the City of Providence.

Section 2. Any license issued in accordance with the provisions of this ordinance shall be renewed weekly at the option of the exhibitor, subject however to the payment of the appropriate fee as established by ordinance.

Section 3. Application for licenses shall be submitted to the Bureau of Licenses at least forty-eight (48) hours prior to the first time appointed for the initial exhibition of the performance, show or exhibition. In determining the forty-eight (48) hour period herein set forth, Saturdays, Sundays and legal holidays shall not be counted. Said application shall contain the title of or a description of said performance, show or exhibition. At the time of the filing of the application, the exhibitor shall make available for viewing by the Bureau of Licenses the performance, show or exhibition. If at the time of the filing of the application the performance, show or exhibition is not available for viewing, the Bureau of Licenses may return the application to the exhibitor without prejudice to the exhibitor for its resubmission at any time the performance, show or exhibition is available for viewing.

Section 4. The members of the Bureau of Licenses shall cause a preliminary investigation to be made by the Amusement Inspector of the City of Providence to determine the legitimacy pursuant to the General Laws of Rhode Island of said show or exhibition and shall cause a report to be made by the Amusement Inspector forthwith.

Said investigation by the Amusement Inspector of the City of Providence shall consist of:

A. Review of the applicants

B. Review of the title of the show or exhibition

C. Said investigation of the show or exhibition shall be made by a review of the available theatrical trade papers, theatrical trade periodicals, and theatrical publications not respecting those of any religious group.

Said Amusement Inspector shall upon completion of his investigation forward to the Bureau of Licenses a report containing the compilation of critical review from various

theatrical critics. In the event that said report reflects said show or exhibition to be controversial with regard to obscenity, or if the report indicates that the show or exhibition has not been reviewed and there is no available information relating to the content of said show or exhibition, said Bureau of Licenses may cause a view of said performance, show or exhibition prior to its licensing.

A view of said questionable performance, show or exhibition shall be made by the commissioners of the Bureau of Licenses, the Amusement Inspector, and an attorney of the Law Department of the said City of Providence.

Said members of the Bureau of Licenses shall determine whether or not there is a probable cause of obscenity. Said determination of probable cause of obscenity shall be based upon whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest and has no social redeeming value.

In the event that the said members of the Bureau of Licenses are of the opinion that the said license should not be granted on the ground that the said performance, show or exhibition is obscene, the Bureau of Licenses shall within forty-eight (48) hours of the filing of such application commence an action in the Superior Court for Providence and Bristol Counties pursuant to the provisions of Section 5-22-5 of the General Laws of the State of Rhode Island, 1956, as amended.

Section 5. This Ordinance shall take effect upon its passage.

*Richard Skolnik, Milton Stanzler,* for plaintiff.

*Robert McOsker,* City Solicitor, *Vincent Piccirilli,* Asst. City Solicitor, for defendant.