STATE

v.

Misak S. BERBERIAN and Sarkis Berberian.

No. 80–76–C.A.

Supreme Court of Rhode Island.

March 25, 1981.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, Appellate Division, for plaintiff.

Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Lynette Labinger, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

The defendants, Misak and Sarkis Berberian, both were indicted for violation of G.L. 1956 (1969 Reenactment) § 11–31–1, as amended by P.L. 1979, ch. 406, § 1. Section 11–31–1 provides in part:

"Every person who willfully or knowingly promotes for the purpose of commercial gain within the community any show, motion picture, performance, photograph, book, magazine, or other material which is obscene shall upon conviction be punished by a fine of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) or by imprisonment for not more than two (2) years or by both such fine and imprisonment."

Prior to trial, the defendants filed motions to suppress the evidence seized and to dismiss the indictments. The trial justice granted both motions, and the state now appeals from the judgments.

The facts are not in dispute. The record discloses that defendant Sarkis (Jon) Berberian is the theater manager of the Columbus Theatre. Defendant Misak Berberian is an employee of the Columbus Theatre. Sometime prior to September 19, 1979, pursuant to his duty as theater manager, defendant Jon Berberian applied to the Providence Bureau of Licenses (Bureau) for a license authorizing the showing of two R-rated films entitled "Blue Perfume" and "Honey Buns."[1] The record indicates that upon filing the application for the license, defendants made the films available for viewing to the Bureau. The Bureau issued the license to permit the showing of the

films from September 19, 1979, through September 25, 1979, without ever having viewed the films. Relying on the Bureau's action, defendants exhibited the films.

On September 19, 1979, Detective Sergeant David Driscoll and Captain Donald Miller of the Rhode Island State Police went to the Columbus Theatre and viewed the subject films. Detective Sergeant Driscoll thereupon set out in a sworn affidavit a description of the two films. Relying on this supporting affidavit, a trial justice of the District Court issued a warrant authorizing the search of the Columbus Theatre.

On September 20, 1979, Detective Sergeant Driscoll presented the warrant to defendant Jon Berberian. Pursuant to said warrant, the films and other business records were seized. Based on the seized evidence, indictments were returned against defendants charging them with "willfully and knowingly [promoting] for the purpose of commercial gain within the community * * * a motion picture * * * which is obscene" in violation of G.L. 1956 (1976 Reenactment) § 11–31–1 as amended by P.L. 1979, ch. 406, § 1.

Prior to trial, defendants moved to suppress the films and other business records seized on the ground that the search warrant did not issue in compliance with Super. R.Crim.P. 41(c) and that the search warrant stated no grounds or probable cause for its issuance.[2] The defendants also moved to dismiss the indictments on the ground that the issuance of the license by the Bureau barred any criminal prosecution against defendants under § 11–31–1.

In considering both motions, the trial justice determined first that the search warrant did not strictly comply with the provisions of Super.R.Crim.P. 41(c) because it "stated no grounds for probable cause for its issuance" and further that the license issued for the showing of the films reflected the Bureau's judgment that the films were

---

1. The defendant was acting in accordance with G.L. 1956 (1976 Reenactment) § 5–22–5 and Providence Code of Ordinances §§ 14–198 to 14–201.

2. It should be noted that the supporting affidavit was not attached to the warrant served upon defendant, Jon Berberian.

not obscene and consequently that defendants were entitled to the license as a matter of right. Thus, the trial justice concluded that the possession of the license by defendants was a bar to their prosecution under the indictment issued. Accordingly, the trial justice granted both defendants' motions.

The questions presented before us are: 1) whether defendants had a right to rely on the license to show the films issued by the Bureau, thereby barring any criminal prosecutions against them pursuant to G.L. 1956 (1976 Reenactment) § 11–31–1, as amended, and 2) whether there was probable cause to issue a search warrant.

### I

The state contends first that the granting of a license pursuant to G.L. 1956 (1976 Reenactment) § 5–22–5 should not bar prosecution because the license "lacked sufficient probative value on the question of obscenity to provide a shield against the indictments." According to the state, § 5–22–5 was not intended to give absolute power to the cities and towns to determine obscenity. Rather, the state argues that § 5–22–5 provides that the Bureau has the option of either granting the license or commencing proceedings to restrain the allegedly obscene exhibitions once an initial determination of probable obscenity is made. According to the state, the ultimate determination of what constitutes obscenity remains with the state and not the cities and towns. If we were to otherwise construe § 5–22–5 and Providence Code of Ordinances §§ 14–198 to 14–201, the state argues that § 11–31–1 would be ineffective for accomplishing its overriding purpose of stemming the tide of commercial obscenity. Additionally, the state asserts that reliance by defendants on the license issued by the Bureau was unreasonable because the Bureau did not follow the procedures posited in § 5–22–5 and § 14–201 of the Providence Code of Ordinances.[3] Finally, the state contends that § 11–31–1 "puts the defend-

ants on notice that the exhibition of an obscene film is a criminal offense and therefore places the burden of determining what probable obscenity is on the defendants." We disagree.

 Any system of prior restraints of expression bears a heavy presumption against its constitutional validity. *Freedman v. Maryland*, 380 U.S. 51, 57, 85 S.Ct. 734, 738, 13 L.Ed.2d 649, 654 (1965); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593 (1963). In dealing with obscenity, a state cannot adopt procedures without regard to the possible consequences for constitutionally protected speech. *Marcus v. Search Warrant*, 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127, 1136 (1961). It is a well-settled rule, however, that a noncriminal process that requires prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. *Freedman v. Maryland*, 380 U.S. at 58, 85 S.Ct. at 738–39, 13 L.Ed.2d at 654. Included in such a list of safeguards is the placing of the burden of proving that a film is unprotected expression on the censor. *Id.; Shipyard Drive-In-Theatre, Inc. v. Scuncio*, 107 R.I. 554, 565, 268 A.2d 820, 826–27 (1970), *cert. denied*, 401 U.S. 1005, 91 S.Ct. 1252, 28 L.Ed.2d 541 (1971). At the same time, "the exhibitor must be assured * * * that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film." *Freedman v. Maryland*, 380 U.S. at 59, 85 S.Ct. at 739, 13 L.Ed.2d at 654–55. If any restraint is imposed prior to judicial determination, the status quo must be maintained for the shortest fixed period. Thus, the procedure adopted must require a prompt, final judicial determination to support the imposition of a valid final restraint. *Id.* at 59, 85 S.Ct. at 739, 13 L.Ed.2d at 655.

 It is clear from a reading of § 5–22–5, as amended, that the Legislature delegat-

---

**3.** For example, the state contends that the Bureau had the obligation to view the film before issuing a license pursuant to the procedures

outlined in § 5–22–5 and § 14–201 of the Providence Code of Ordinances.

ed its police power to regulate obscenity to the cities and towns in accordance with the procedural safeguards delineated in *Freedman. Shipyard Drive-In-Theatre, Inc. v. Scuncio*, 107 R.I. at 566, 268 A.2d at 827. Similarly, § 14–201 of the Providence Code of Ordinances properly sets forth the procedure and criteria to be followed by the Bureau in compliance with the dictates of *Freedman* and § 5–22–5.

In the instant case, the record shows that the Bureau issued the license to show the films upon defendant Jon Berberian's application and that defendant relied on said license to exhibit the films. Pursuant to § 5–22–5 and Providence Code of Ordinances § 14–201, the Bureau had the option of either granting the license sought by defendants or commencing judicial proceedings to adjudge the films obscene. The effect of the Bureau's actions in issuing the license then, was that the films were not adjudged obscene.

■ Additionally, we note that contrary to the argument advanced by the state, there is no requirement in the Providence Code of Ordinances or in § 5–22–5 that the Bureau actually view the films. Pursuant to § 14–201 of the Providence Code of Ordinances, the Bureau could rely on theatrical trade reviews and other such publications in making decisions concerning license applications. Thus, given the "R" ratings of the subject films, it was entirely reasonable for the Bureau to conclude that the films were not obscene.

The state nevertheless argues that if the Bureau's conclusion is wrong, barring the state from prosecuting a defendant who shows a film that may in fact be obscene unduly interferes with the legislative objectives set forth in §§ 11–31–1 through 11–31–14. Alternatively, the state argues that defendants cannot raise a defense of estoppel against the government to preclude a criminal prosecution. *See, e. g., United States v. Mattucci*, 502 F.2d 883, 890 (6th Cir. 1974); *Carolina-Virginia Racing Ass'n, Inc. v. Cahoon*, 214 F.2d 830, 832 (4th Cir. 1954); *cf. Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387,

391, 61 L.Ed. 791, 818 (1917) (government not estopped by acts of agents sanctioning what the law does not permit). It has been ruled, however, that in certain situations when an authoritative government agency or voice issues an official assurance or affirmatively misleads a defendant into believing that criminal sanctions do not apply to his behavior, no criminal sanctions will attach to the defendant because the defendant has been deprived of notice about what conduct the government intended to make criminal in violation of due process. *See United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, *reh. denied*, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 841 (1965); *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959).

In the instant case, it is clear that the Legislature has delegated to the Bureau the responsibility of regulating the exhibition of films pursuant to § 5–22–5. *See Shipyard Drive-In-Theatre, Inc. v. Scuncio*, 107 R.I. at 564, 268 A.2d at 826. It is also clear from a reading of the facts and circumstances of this case that no final judicial determination that the films were obscene was ever made. Accordingly, we find that the issuance of a license by the Bureau for the subject films did indeed constitute an official and express assurance from which, absent a final judicial determination that the films were obscene, no criminal prosecutions against defendants under § 11–31–1 could attach. Therefore, we find that defendants had a right to rely on the license issued by the Bureau, thereby barring any criminal prosecution under § 11–31–1.

## II

■ With respect to the arguments concerning the motion to suppress, because of our decision that no criminal offense had been committed by the defendants, it is unnecessary to consider the propriety of the issuance of a search warrant. Any property seized thereunder must be returned.

The appeal of the state is denied and dismissed, the judgments appealed from are affirmed.

SHEA, J., did not participate.