NEWPORT AMUSEMENT COMPANY, INC. *et al. vs.*
JAMES L. MAHER *et al.*

DECEMBER 20, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is a petition for a declaratory judgment under the uniform declaratory judgments act, general laws 1956, chapter 9-30. After a trial on the merits of the petition a justice of the superior court entered a final decree denying it. From such decree the petitioners have appealed to this court. Being in doubt as to the proper procedure under the act for obtaining a review here they have also duly prosecuted a bill of exceptions. That doubt arises from the indefiniteness of §9-30-7 which provides for review as follows: "All orders, judgments and decrees under this chapter may be reviewed as other orders, judgments and decrees." Such provision manifestly fails to take into account marked differences in our appellate procedures in actions at law and suits in equity.

Since this proceeding for a declaratory judgment is neither an action at law nor a suit in equity but a novel statutory proceeding, the general assembly would have been well

advised if it had expressly provided therein a definite mode of procedure for review rather than leaving it to conjecture whether in a given case review should be by appeal as in equity or by bill of exceptions as at law. However, we think petitioners' difficulty here may be reasonably resolved. Since the petition prays for preventive relief by injunction which is obtainable only in equity and since the cause has been concluded below by entry of a final decree as in equity rather than a judgment as at law, we are of the opinion that in such circumstances review by appeal is the more appropriate remedy. The bill of exceptions is therefore dismissed pro forma.

The controversy between the parties arose as the result of the enactment on December 23, 1959 of Ordinance No. 301, chapter 132, by the city council of the city of Newport. The pertinent portions of section 132-1, "Definition Of Terms," read as follows:

"(a) the term 'juke box' shall mean any music vending machine, contrivance or device which, upon the insertion of a coin, slug, token, plate, disc, or key into any slot, crevice, or other opening, or by the payment of any price, operates or may be operated, for the omission [sic] of songs, music or similar amusement;

"(b) the term 'mechanical amusement device' shall mean any machine, which, upon the insertion of a coin, slug, token, plate or disc, may be operated by the public generally for use as a game, entertainment or amusement, whether or not registering a score. It shall include such devices as marble machine, pinball machines, skill ball, mechanical grab machines, mechanical pool tables and all games, operations, or transactions, similar thereto under whatever name they may be described."

Section 132-2, "License Required," reads as follows:

"No person shall have, or keep, in any store, shop, tavern, restaurant, or any other place of business within the City of Newport, any Juke box or mechanical amusement device as herein defined by 132-1 unless the

owner thereof shall have obtained a license therefore [sic] from the City of Newport upon payment of a license fee as hereinafter provided. Application for such license shall be made to the Council upon a form approved by the Council to be supplied by the City Clerk."

On December 26, 1959 petitioners, who are the owners of many coin-operated amusement devices and juke boxes located in Newport, filed the instant petition in which they prayed that the ordinance be declared null and void either in its entirety or in so far as it imposed a license fee and prohibited use of the machines by minors under the age of eighteen years. They also prayed therein that respondents be enjoined from preventing the use of the juke boxes and amusement devices by petitioners and from bringing any charges against them under the provisions of said ordinance.

In the superior court petitioners contended that the ordinance was an unlawful exercise of the taxing power reserved to the state. They also contended that the ordinance if viewed as a regulation in exercise of the police power was equally invalid because the legislature had pre-empted that particular field by the enactment of G. L. 1956, §5-2-10. And in any event, they argued, the fee of $25 for each machine was so unreasonable as to render the ordinance invalid.

The trial justice did not directly pass upon the first two contentions but held that the city having adopted a home rule charter pursuant to article XXVIII of amendments to the state constitution had plenary power thereunder to enact the ordinance. And he found on the evidence before him that the fee of $25 was reasonable. Neither party raised the home rule point below but on the appeal in this court both of them have briefed and argued it in connection with the points upon which petitioners rely.

In support of their claim that the trial justice erred in denying their petition, petitioners filed ten reasons of appeal but in their brief they have compressed them into three

points. Under the first point they make this contention: "The ordinance is void because the City of Newport, even under its home rule charter, does not have authority to license juke boxes and mechanical amusement devices; the ordinance does not pertain strictly to municipal matters, but is of state wide concern."

There is merit in that contention and we therefore hold that the trial justice erred in resting his decision on the home rule amendment. That amendment does not take away from the legislature its exclusive power over licensing and vest it in municipalities which adopt home rule charters. The power to regulate occupations and businesses by licensing provisions and by imposing a licensing fee is an attribute of sovereignty. It is not an incident of municipal administration and may not be exercised by municipalities except where it is lawfully delegated to them in particular instances expressly or by necessary implication. *State* v. *Brown,* 135 Me. 36; *Salomon* v. *City of Jersey,* 12 N. J. 379; *Edwards* v. *Mayor and Council of Borough of Moonachie,* 3 N. J. 17. 53 C.J.S. Licenses §10c., p. 477.

Article XXVIII of amendments does not either expressly or by necessary implication vest municipalities with such power because section 1 of that amendment clearly states the intent thereof is to grant the right of self-government only in all *local* matters. Licensing is definitely not a local matter. The power to license has never been exercised by the municipalities of this state as far as we are aware except by express authorization of the legislature.

If the people had intended by article XXVIII of amendments to divest the legislature of this power in so far as municipalities which adopted home rule charters were concerned, it seems to us that they would have clearly said so. The language of sec. 2, in our opinion, does the contrary. The power of home rule therein granted to any city or town which adopts a charter is narrowly limited to the enactment or amendment of "local laws relating to its property, affairs

and government not inconsistent with this constitution and laws enacted by the General Assembly * * *." To construe such language as a grant of plenary power to enact licensing laws without regard to the will of the legislature would be a strained construction having little if any relation to its plain, ordinary meaning.

Such a construction could be reached only by equating licensing with "local laws." This cannot be reasonably done. If this were done home rule municipalities would be authorized not only to enact licensing laws for their localities inconsistent with those enacted by the legislature on the same matters for the rest of the state, but also to enact such laws whether the legislature had ever done so previously on the same subjects or not. In other words the plenary authority vested in the legislature to license in exercise of the police power would be transferred completely to each home rule city or town. Therefore the ground upon which the trial justice rested his decision is erroneous, but whether or not the decision itself is erroneous depends upon whether the legislature has authorized cities and towns to license such devices as are described in Ordinance No. 301.

Under their second contention petitioners argue that "The General Assembly has preempted the power to license amusement devices by enacting 5-2-10 G. L. 1956, and the City of Newport cannot enter the field that the legislature has covered." That section reads as follows:

> "Licensing of billiard, bagatelle, pool, and scippio tables.—No person shall keep a billiard table, bagatelle table, pool table, scippio table, or any table of a similar character, in any saloon, shop, or place of business within this state, or own or keep any such table for public use or profit within this state, without a license from the town council or city council of the town or city where the same is so kept or used, first had and obtained; and such town council or city council may, in its discretion, grant or refuse to grant licenses therefor, and the licenses so granted shall continue for a term not exceeding one (1) year."

It does not appear from the evidence that petitioners keep any of the tables expressly enumerated therein but it is argued by respondents that the amusement devices which they do keep on their premises are "of a similar character." Four exhibits in evidence are illustrated brochures showing such devices to be a coin-operated music recorder popularly known as a "juke box," a baseball game mounted on a coin-operated mechanical table, a similarly mounted and operated target shooting device called "Texan," and another target device called "Pony Express."

In our opinion none of those devices sufficiently resembles any of the tables enumerated so as to be reasonably deemed a "table of a similar character." We are therefore of the opinion that there is no merit in petitioners' contention that the field of regulation comprehended by the ordinance has been pre-empted by the legislature.

For the same reason the respondents cannot successfully maintain that §§5-2-11 and 5-2-13 of the act furnish the city with the necessary enabling authority to impose a license fee on petitioners' devices and prohibit the use of such devices by any minor under the age of eighteen years. In the absence, therefore, of express legislative authority to license the particular devices kept by petitioners the ordinance must be declared invalid.

The respondents have referred to no such specific legislation but have relied principally upon the argument that the amusement devices above described are in the nature of bagatelle tables. In support of their contention they cite certain descriptions of bagatelle in 2 Collier's Encyclopedia (1958), pp. 661, 662, Wood & Goddard's The Complete Book of Games (1940), p. 390, and Webster's New International Dictionary (2d ed. 1940). We do not think any of those descriptions or definitions identify petitioners' amusement devices sufficiently so as to bring them within the intended scope of §5-2-10. Certainly a "juke box" is

far removed from anything in the nature of a bagatelle table as thus described.

Since we are of the opinion that the ordinance is null and void because licensing legislation is the exclusive prerogative of the legislature except where it has expressly conferred such power upon a city or town, and since there has been no express delegation of that power to the city of Newport in respect to the amusement devices here in question, there is no necessity for us to consider other contentions made by the respondents or the petitioners respectively for or against the validity of the ordinance.

For the reasons above set forth the petitioners' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with directions to enter a new decree declaring Ordinance No. 301 null and void and granting the petitioners such other relief prayed for in their petition as to said court shall seem meet and just.

*John C. Burke, Paul J. DelNero,* for petitioners.

*John F. Phelan,* City Solicitor, for respondents.

LOUIS VITI *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

DECEMBER 21, 1960.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This petition for certiorari was brought to review the action of the respondent board in granting relief from side and rear yard regulations in the proposed erection of a one-story masonry building located in a C-2 general commercial zone. Pursuant to the writ the pertinent records have been certified by the board to this court.

It appears therefrom that Albert Gizzarelli, hereinafter referred to as the applicant, is presently the owner of lots numbered 319 and 320 on assessor's plat 65 located in a general commercial C-2 zone. The property fronts on the southerly side of Chalkstone avenue for a distance of 84.24 feet, with a depth of 80.23 feet on Geneva street which bounds the property on the west. The property is bounded on the east by a lot zoned R-3, which, however, is occupied in its entirety by a building used as a furniture store.

The petitioners are the owners of property in an R-3 general residence zone abutting the land in question to the south.

Abutting petitioners' land to the north, on the southerly line of the applicant's land and abutting the furniture store on the east, are two four-stall masonry garages in a dilapidated and hazardous condition. The building inspector ordered the applicant either to tear them down or put them in repair. Whether the garages have already been removed does not appear from the record, but in any event the applicant proposes to erect a building 80 feet in length by 49 feet in width to be used for retail stores.

It further appears from the record that the inspector of buildings refused to issue a building permit for the reason that the plans submitted by the applicant were not in conformity with the Zoning Ordinance of the City of Providence (rev. 1957), chapter 544, article V, sec. 51, C-2 and C-3.

C-2 provides in substance that where the side of a lot in a C zone abuts upon the side of a lot in an R zone, there shall be a side yard of not less than 6 feet in width.

C-3 provides in substance that where the rear of a lot in a C zone abuts upon a lot in an R zone, there shall be a rear yard of not less than 20 per cent of the depth of the lot.

The plans, plot plans and parking plans filed by the applicant provided for a rear yard of 8 feet between him and petitioners' land to the south to permit off-street parking in the front of the proposed building. Further, since the building was to be 80 feet in length on a lot 84.24 feet, it would not permit a side yard as provided in C-2.

Upon receiving notice that a building permit would not be granted for noncompliance with the ordinance, Gizzarelli filed an application for relief therefrom with the zoning board of review.

The zoning ordinance, chap. 544, sec. 73 A, provides:

"A.  Yard Regulations Modified

"Where the yard regulations cannot reasonably be complied with or their application determined on lots of peculiar shape, location or topography, such regulations may be modified or determined by the Board, as provided for in Sections 91 and 92."

The form filed by the applicant, which was furnished by the board and is used for all purposes in appeals addressed to it, is entitled "Application for Exception or Variation under the Zoning Ordinance."

Due notice was given by the board for hearing on May 24, 1960 at 3 p.m.  It appears that on the day of the hearing and just prior thereto the board visited the premises in question.  The petitioners were represented at the hearing by counsel and the record contains the written objections of certain remonstrants and also includes a communication from the City Plan Commission giving reasons why it did not object to the relief sought.  The traffic engineer, however, did register an objection.

At the hearing the applicant testified briefly in his own behalf.  He stated that he had been notified by the building inspector either to tear down his garages or put them in repair.  Indicating that he intended to remove them and erect a building 80 feet in length by 49 feet in width to be used for retail stores, he informed the board that he could not comply with the rear and side yard area regulations without destroying "the purpose of the whole building." He testified that to provide parking for deliveries the building was to be located 8 feet from the rear line of the lots, thus affording space in front for a general parking area.  It was the substance of his testimony that a lesser space for parking in front of the building would be inadequate.

The communication from the City Plan Commission advised the board that an inspection survey conducted by it disclosed that the premises contained "two masonry resi-

dential parking garages which were in a blighted and hazardous condition"; that their removal would eliminate a nonconforming use; and that the waiver of the side and rear yard regulations "will not substantially or permanently injure the adjoining residential property * * *."

The city traffic engineer objected on the ground that the parking area design, coupled with the number and location of the driveways on Chalkstone avenue, would require motorists to back out of the parking spaces on to said avenue.

Counsel for petitioners informed the board that it was his clients who complained about the condition of the garages, that they had been successful in bringing the situation to a head, and that they felt the garages would be removed and they would then get the fullest value of their property. He added, "In other words, they would have a reasonable amount of space having no buildings built near their lot."

It was petitioners' contention before the board, and they renewed it before us, that the applicant had not made out a proper case in that there was no presentation of unnecessary hardship.

Thereafter the board adopted a regulation, the pertinent provisions of which are as follows:

"Whereas, the Zoning Board of Review examined in detail all of the testimony adduced at the hearing including the application and plans and all other testimony offered by both the applicant and objectors and weighed all the testimony so offered, and

"Whereas, in the opinion of the members of the Zoning Board of Review, the granting of a variance of side yard and rear yard regulations under the Zoning Ordinance in this case would not be contrary to the public interest and that the appropriate use of neighboring properties would not be substantially or permanently injured, and that the literal enforcement of the provisions of the Ordinance will result in unnecessary hardship,

"Resolved: That the Zoning Board of Review does hereby make a variation of the side yard and rear yard regulations under the Zoning Ordinance and does hereby grant the application of Albert Gizzarelli substantially in accordance with the plans, plot plans and parking plans filed with said Board. A copy of said plans, plot plans and parking plans are hereby made a part of this resolution and filed with the Director of the Department of Building Inspection."

The petition sets forth and counsel contends that the decision of the board was wholly illegal in that it acted arbitrarily and in excess of its powers, and was guilty of an abuse of its discretion for the reasons that there was no evidence that the granting of said application was not contrary to public safety, convenience or welfare, or would not substantially and permanently injure the appropriate use of neighboring property. The petitioners further contend that there was no evidence that the permission was reasonably necessary for the convenience and welfare of the public, that enforcement of the terms of the ordinance would result in unnecessary hardship, that the decision of the board was not supported by credible evidence, or that applicant has not sustained the necessary burden of proof to establish a variance from the literal enforcement of the provisions of the ordinance.

All of these contentions presuppose that the burden of proof on the applicant and the scope of the board's discretion are in the instant circumstances subject to the standards applicable in a petition for a true exception or variance, namely, permission to use one's land for a use not presently permitted.

The jurisdiction of the board to pass upon an application for a proper exception or variance is contained within subsections b and c of general laws 1956, §45-24-19. The circumstances of the instant appeal to the board, in our opinion, do not require the property owner to prove a loss of all beneficial use in order to establish a right to relief. Nor

is the board required to find that the relief sought will serve the convenience or welfare of the public.

Although the side and rear yard regulations are contained in the zoning ordinance, the title of chapter 544 is "An Ordinance Zoning the City of Providence and *Establishing Use, Height and Area Regulations*," and such regulations as are here considered do not constitute "zoning" as that term is generally construed. (italics ours) They are regulations governing a permitted use as distinguished from the limitations on the use which one may make of his property.

The property in question was wholly zoned C-2 and within such a zone retail stores are a permitted use. The board visited the premises and presumably observed that the lot to the east of applicant's property was completely occupied by a furniture store. It abutted petitioners' property on the property line, and to require the applicant to maintain a 16-foot rear yard on a lot 80 feet in depth may well have seemed unreasonable to the board. The record discloses that the board was made aware of the objection registered by the city traffic engineer, but it was also undoubtedly aware that the City Plan Commission offered no objection. The latter agency commented on the fact that the removal of the garages would eliminate a nonconforming use, and this is evidence which the board might properly consider. The objection of the city traffic engineer was addressed to the provisions made for parking in the front of the property. The applicant, however, had a right to build a retail store on his land, and parking on the highway resulting therefrom may well have seemed less satisfactory to the board than the off-street parking arrangements proposed by the applicant.

The petitioners contend that the resolution adopted by the board granting the applicant the relief sought does not contain the reasons on which the board based its decision. They concede, however, that if the record discloses grounds of legal sufficiency, the decision of the board will not be dis-

*Arcaro, Belilove & Kolodney,* for petitioners.

*William E. McCabe,* City Solicitor, *Harry Goldstein,* for respondent.