**STATE of Rhode Island,**

v.

**EIGHT CITIES AND TOWNS.**

**No. 88–451–Appeal.**

Supreme Court of Rhode Island.

March 12, 1990.

James E. O'Neil, Atty. Gen., Lauren E. Jones, Sp. Legal Counsel, Providence, for plaintiff.

Scott T. Spear, Gorham & Gorham, Sue Zanne Worrell, DiCara, Selig, Sawyer & Holt, Providence, for defendants.

## OPINION

KELLEHER, Justice.

This Superior Court declaratory-judgment action involves the State of Rhode Island and eight of its municipalities.[1] At issue is whether the State or the individual municipalities, during the period 1978 through 1986, had the responsibility of withholding the municipal employees' share and paying the employers' share of the taxes due the Social Security Administration (SSA) on the educational-incentive pay paid to the eligible members of the municipalities' police and fire departments. Hereafter we shall refer to the eight municipalities as the defendants.

To put this dispute in its true focus, we go back in time to the 1960s when the General Assembly enacted G.L.1956 chapters 28.1 and 28.4 of title 42, both of which established a system of providing monetary-incentive benefits to members of the various municipal fire and police departments in Rhode Island who "further their education so as to improve their professional competence." This legislation permits an accumulation of credits and degrees that would enable an eligible member of a municipal police or fire department to receive annual incentive pay that would range from $1,000 to $3,500 per year. The various municipal police and fire chiefs are required to submit their lists of eligible employees to the State on or before September 1 of each year. The chief of training for personnel in the Department of Administration calculates or verifies the amount of educational-incentive pay due each eligible firefighter or police officer, relying upon the pay plan set forth in the general laws.

The incentive-pay statutes are not in dispute. However, sometime in 1981 the SSA determined that incentive payments were a form of wages subject to taxes pursuant to the Federal Insurance Contribution Act (FICA), 26 U.S.C. §§ 3101–3128 (1983). The State argues that defendants, as the beneficiaries' employers, should be responsible for the "incentive" taxes due the Federal agency whereas defendants argue that since these taxes were part of the cost of making the incentive payments, the ultimate responsibility for the taxes sought lies with the State.

The State and all thirty-nine of its municipalities participate in the Federal Social Security system pursuant to 42 U.S.C. § 418 (1983). The State has also executed a written contract for employee coverage with the administrator of the SSA. Moreover, 42 U.S.C. § 418(e)(1)(A) and the contract obligates the State to make the actual payments to the Federal government for taxes imposed pursuant to FICA. 26 U.S.C. §§ 3101 and 3111. However, the State has never paid any part of the "incentive" assessment, demanding instead that defendants pay their respective shares to the State.[2]

In late January 1988 the State filed a motion for summary judgment, and in early April 1988 the State sent a notice to each defendant indicating the FICA taxes due from each. The defendants filed a motion to dismiss the action on the grounds that they had not been presented with the claim prior to the institution of the suit as required by G.L.1956 (1988 Reenactment)

---

1. Named as defendants are the towns of Barrington, Portsmouth, Cumberland, Lincoln, Foster, and Scituate, as well as the cities of North Providence and Warwick, all of which have refused to withhold the taxes due on incentive pay pursuant to G.L.1956 (1988 Reenactment) chapters 28.1 and 28.4 of title 42, paid to police officers and firefighters for college credits they earned in courses pertinent to their occupation.

2. The agreement that required the State to collect the assessments expired on December 31, 1986. After initiating this suit, the State filed claims in the Superior Court against each defendant for the FICA taxes due on the incentive payments for the period in question. The total amount of the State's claim is slightly in excess of $426,000. The claim against the city of Warwick is for $172,607, and the other claims diminish in value to the point where the State's claim against the town of Foster is for $2,899. It should be noted that on January 1, 1987, the Internal Revenue Service assumed the responsibility for collection of FICA taxes.

§ 45–15–5, as well as its cross-motion for summary judgment.

The trial justice granted the State's motion for summary judgment, and defendants have appealed. The issues presented here relate to the trial justice's rejection of defendants' reliance on § 45–15–5 and his grant of the State's motion for summary judgment.

General Laws 1956 (1985 Reenactment) § 9–30–1 of the Uniform Declaratory Judgments Act authorizes the Superior and Family Courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9–30–2 of the act specifies, "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity * * * and obtain a declaration of rights, status or other legal relations thereunder."

We turn now to the trial justice's rejection of defendants' reliance on § 45–15–5, a statute that has been part of our legal framework since 1896. Section 45–15–5 provides that any individual who shall have any money due him or her by any municipality shall present to the town's legislative body a detailed account of the person's claim, debt, damages, or demand, and the manner by which the same was incurred or contracted. If the claim is not satisfied within forty days of its presentment, the individual may commence suit against the treasurer for recovery of the same.

It should be noted, however, that through the years relief has been granted despite the fact that a petitioner has failed to give notice under this section. In *Lonsdale Co. v. Woonsocket*, 25 R.I. 428, 56 A. 448 (1903), a petition for injunctive relief was granted despite the fact that the petitioner had failed to give the statutory notice. In more recent times this court has found that a sex-discrimination complainant was not obligated to comply with § 45–15–5 because most of the available remedies in the controversy were equitable

in nature. *Town of Johnston v. Ryan*, 485 A.2d 1248 (R.I.1984).

It is our belief that the Legislature, in enacting what is now § 45–15–5 by speaking in terms of "claim," "debt," "damages," or "demand," was using these words in a monetary context. Consequently we believe that a claim such as one for a declaration of rights and liabilities does not come within the reach of the 1896 statute. The fact that one or another of the litigants might ultimately become monetarily liable as a result of the final decision in this controversy does not transform this litigation into a claim for money. Again, in *Newport Amusement Co. v. Maher*, 92 R.I. 51, 53, 166 A.2d 216, 217 (1960), this court emphasized that a declaratory-judgment action is "neither an action at law nor a suit in equity but a novel statutory proceeding." We would point out that the declaratory-judgment action did not become part of Rhode Island's legal fabric until 1959 whereas the notice-of-claim requirement has been part of our law since the late 1800s. Consequently we affirm the trial justice's rejection of defendants' reliance on the State's failure to file a statutory claim.

Turning now to the trial justice's grant of the State's motion for summary judgment, defendants claim that the trial justice overlooked the plain language of §§ 42–28.-1–7 and 42–28.4–6, which state that "[t]he state of Rhode Island shall bear the expense for incentive payments." Thus defendants argue that included within the term "expense" are the taxes due the Federal government. The defendants also contend that the only exceptions to the State's responsibility for expenses incidental to the incentive-payment program are those set forth in § 42–28.1–5, which requires a municipality to reimburse the student police officers for all their "eligible expenses," including the cost of "tuition, books and supplies." The defendants also emphasize that pursuant to the Social Security agreement executed by the State and the Social Security administrator, the State is obligated to make the actual payments for the taxes assessed pursuant to FICA. They

also argue that the sending by the Department of Health and Human Services (DHH) of the assessment directly to the State was further indication of DHH's belief that the State was liable for the reporting and paying of the FICA taxes. The defendants also argue that the State's failure to question, contest, or charge defendants in a timely manner with an assessment constitutes a waiver on the part of the State to deny primary liability.

In his consideration of the pertinent statutes that obligate the State to bear the cost of incentive payments, the trial justice found that they contained "no language evincing a legislative intent that the state should bear all expenses relating to or arising out of the incentive pay programs." He further determined that the incentive-pay statutes merely direct the State to set aside a sum for the incentive payments and ruled that the sole responsibility imposed on the State was its obligation to pay each defendant an amount sufficient to cover the basic incentive payments.

We begin our consideration of the various contentions made by defendants by examining the extent of the State's obligations under FICA. An examination of 26 U.S.C. § 3121(b)(7) indicates that the states and their political subdivisions are exempt from FICA. However, 42 U.S.C. § 418 allows a state to waive its exemption by entering into an agreement with DHH. The State of Rhode Island executed such an agreement in 1951. Any municipality wishing to participate in this program could do so only if the State agreed to the municipality's participation. 42 U.S.C. § 418(a)(1). The 1951 agreement covers all State and municipal employees. Consequently defendants' employees are participants in the Federal program.

The trial justice, in considering the relevant statutes, pointed out that the notice of assessment and the agreement between the State and DHH were necessarily addressed to the State's liability since defendants were "not parties to this agreement and have no authority to participate in social security independent of the state." The trial justice also emphasized that the State had agreements with each defendant that allowed it to participate in the Social Security program provided it agreed to withhold the employees' share and pay the employers' share to the State. Thus the State in turn would then be obligated to pay the total amount collected to the SSA. Finally the trial justice ruled that defendants, as common-law employers, were obligated to withhold and pay the FICA tax on the incentive pay. The State, he emphasized, had no obligation to reimburse defendants for those costs.

▆ The trial justice was quite correct in determining that defendants were expected, in keeping with the arrangements between DHH, the State, and defendants, to withhold the employees' share of the tax on the incentive pay and pay it to the State along with the employers' share of the FICA tax on regular wages. We would also emphasize that the only wages being taxed in this dispute are the incentive payments, mandated and paid for by the State.

The General Assembly, in making incentive payments available to municipal police officers and firefighters, at no time endowed defendants with any power to deny these benefits to their employees. An examination of §§ 42–28.1–7 and 42–28.4–6 indicates that each begins with the mandate that the State of Rhode Island shall bear the expense for incentive payments. However, § 42–28.1–5 requires defendants to reimburse the police officers for the cost of such items as tuition, books, and supplies. This provision clearly indicates that the Legislature did not intend that the State should bear all expenses arising out of this ingenious plan.

Incentive pay is not tied to any particular expenses but merely provides for an increase above the recipient's salary based upon the number of college credits or degrees earned. Sections 42–28.1–3 and 42–28.4–3. Although defendants are not required by any provision in chapter 28.4 of title 42, to reimburse firefighters for their expenses, the existence of § 42–28.1–5 does indicate that the Legislature did intend that defendants should share some of the expenses of educating their employees.

■ However, even if the record were bare of any indication of legislative intent or a sharing of the costs, it is our belief that under FICA provisions, defendants cannot escape ultimate liability for the taxes. The initial decision in this dispute was made in 1981 when DHH ruled that incentive payments constituted wages. Consequently the employer of a person receiving wages is responsible for the FICA withholding payments. 26 U.S.C. § 3121.

It should be noted that defendants do not contest their status as common-law employers but strenuously argue that the State should pay the taxes in question because it failed to give defendants notice and precluded them from challenging the wage determination at an administrative level or possibly in Tax Court. On the other hand, it does appear that as early as April 1979 defendants had been notified by DHH of its decision to tax incentive payments,[3] and if so, they independently waived their right to contest the ruling. It should be noted, however, that the DHH ruling is not the real issue in this controversy. It is not the assessment itself but determining the responsible party that is in issue in this dispute.

The trial justice found that there was no basis for holding that the State was the employer of the police officers or the firefighters merely because the State was providing the incentive payments. However, defendants argued that an employer-employee relationship is not necessarily determinative on the issue of who should be liable for the taxes in question. The defendants refer us to the opinions of two Federal District Courts in which it was determined that non-common-law employers were liable for the FICA taxes when they were the source of control of payment of the funds.

In *STA of Baltimore—ILA Container Royalty Fund v. United States*, 621 F.Supp. 1567 (D.Md.1985), *aff'd*, 804 F.2d 296 (4th Cir.1986), the essential issue was whether payments from an employee-benefit fund based on past performance were wages. The fund had been established pursuant to a settlement of a labor dispute between the employer's association and the union that came about because of an anticipated reduction in employment opportunities for longshoremen because the employer was about to undertake a containerization[4] program. The court ruled that the employer's contributions to the fund were wages for the purpose of FICA because the fund had been acting as an agent for the employers. Certainly in the controversy before us, the State of Rhode Island was not acting as an agent for defendants in making the incentive payments, nor was it making direct payments to the employees as the benefit fund was doing in the *ILA Container* litigation.

The other case to which our attention has been directed is *In re Armadillo Corp.*, 410 F.Supp. 407 (D.Colo.1976), *aff'd*, 561 F.2d 1382 (10th Cir.1977), where the court found that a trustee in bankruptcy was responsible for both facets of the FICA

---

**3.** In addition to its brief, defendants submitted a voluminous appendix section and in appendix 38 is to be found an office correspondence between the DHH regional manager in Boston and an associate commissioner. On October 7, 1981, the associate commissioner noted that the regional commissioner had asked for a review of the decision on the wage status of incentive pay for employees of the various municipalities in Rhode Island. The associate commissioner, in concluding the memorandum, noted that "an attorney representing the Rhode Island League of Cities and Towns" had contacted the commissioner's office to ask for "additional time to submit supporting evidence on his clients' behalf." Another document in appendix 38 is a memorandum from the regional commissioner to an associate commissioner. The regional commissioner informed his associate that in an

"on-site review" conducted by regional- and central-office personnel during the week of April 18–26, 1979, it was determined that "incentive pay was in fact wages and therefore subject to contribution. Municipalities in the State of Rhode Island were advised of this finding."

**4.** Containerization has been described as "an efficient and economical method of handling and transporting cargo; it provides a means for transferring cargo from one form of transportation, such as ship, to another form of transportation, such as rail or truck, without the necessity of loading and unloading the individual items of cargo each time the mode of transport changes." *Sea–Land Service, Inc. v. County of Alameda*, 12 Cal.3d 772, 117 Cal.Rptr. 448, 450 n. 1, 528 P.2d 56, 58 n. 1 (1974).

assessment because he controlled the payment of wages. It was also pointed out that under the Federal law, a trustee has complete control over wages and stands in the shoes of the bankrupt employer. The same cannot be said about the State's position in the incentive-pay scheme.

In conclusion we endorse the trial justice's findings that the defendants, as common-law employers, did and have the obligation to withhold and pay the employees' share and to pay the employers' share of the taxes on the incentive payments made to the police officers and the firefighters employed by the eight defendants.

The defendants' appeal is denied and dismissed. The judgment appealed from is affirmed.