DECISION
Before this Court is a petition for Declaratory Judgment. Petitioner Paul Bellucci ("Bellucci") contends that the City of Warwick Retirement Board ("Board") erred in denying his application for disability retirement benefits, and he seeks *Page 2 
this Court to declare that he is entitled to said benefits pursuant to Chapter 60 of the City of Warwick's Code of Ordinances ("Ordinance"), entitled "Retirement System." The facts are not in dispute as the parties stipulated to an agreed statement of facts. Jurisdiction is pursuant to G.L. 1956 § 9-30-2.[1]
 Facts and Travel
On or about May 19, 1975, Bellucci was hired by the City of Warwick ("City"). Bellucci continued to work for the City for approximately twenty-six years until he was terminated on or about July 6, 2001. Shortly thereafter, on August 15, 2001, Bellucci filed an application for federal social security disability benefits.
Meanwhile, Bellucci and the City were in litigation and union grievance proceedings concerning Bellucci's employment termination and pending claim for worker's compensation benefits. On or about July 11, 2002, the City and Bellucci entered into a "Settlement Agreement and Release" ("Release") by which the City paid Bellucci $27,000, and Bellucci executed a Release in favor of the City
Following execution of the Release, Bellucci received a letter dated July 22, 2002, from the Personnel Director for the City, indicating "that as a terminated employee of the City of Warwick with pension contributions currently in the Warwick Municipal Retirement System, you are entitled if you so chose [sic], to a disposition of these funds *Page 3 
or to leave them in the fund and thereby being entitled to a pension when eligible." Bellucci chose the latter option.
Thereafter, on or about August 12, 2003, Bellucci received a decision from Social Security granting him disability benefits. The United States Administrative Law Judge (Administrative Law Judge) determined "that the claimant has been under a disability beginning on June 12, 2000. . . ." Upon receipt of this favorable decision from Social Security, Bellucci filed an application for disability retirement benefits with the Board pursuant to § 60-393 of the Ordinance.
The Board heard Bellucci's application on December 17, 2003, and continued the matter to January 21, 2004; however, that scheduled meeting later was canceled. The Board ultimately met again on May 5, 2004. Thereafter, it denied Bellucci's application for disability retirement benefits. From that adverse decision, Bellucci filed a Petition for Declaratory Judgment with this Court on May 25, 2004. At issue for the Court to decide in this matter is whether Bellucci is entitled to disability retirement benefits under the Ordinance.
 Statutory Interpretation
The Board asserts that pursuant to Ordinance §§ 60-395(a) and (b), any member who terminates employment with the City prior to becoming eligible for disability retirement benefits under Ordinance § 60-393 shall be paid the pension contributions that the individual had contributed into the Ordinance in one lump sum, or if the individual has completed ten years of vesting service, he may then elect ? as Bellucci did ? to defer the lump sum distribution of his contributions and receive a deferred pension upon normal retirement age. The Board contends that under the specific wording of Ordinance *Page 4 
§ 60-393, an individual becomes eligible for disability retirement benefits upon application to the Board and upon certification from the Board that the individual is in receipt of social security disability benefits. To that end, the Board maintains that because Bellucci ceased being a City employee prior to applying for disability retirement benefits, he is not eligible under Ordinance § 60-393.
Bellucci responds that under Ordinance § 60-393, his eligibility to receive disability retirement benefits is based upon the moment he became disabled. Accordingly, Bellucci claims that he meets all the requirements of Ordinance § 60-393 because he received from Social Security a disability decision fully favorable to him and retroactive to June 12, 2000, and that he provided the Board with a copy of this decision. Furthermore, Bellucci maintains that Ordinance § 60-395 is inapplicable because it fails to address whether he qualifies for disability retirement benefits.
This Court reviews issues of statutory interpretation as a matter of law. See Palazzolo v. State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v.Bevilaqua, 432 A.2d 661, 663 (R.I. 1981). In this Court's denovo review, an administrative agency's determinations of law "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'" Gott v. Norberg,417 A.2d 1352, 1361 (R.I. 1980) (quoting Narragansett Wire Co. v.Norberg, 118 R.I. 596, 376 A.2d 1, 6 (1977)).
Where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute [or ordinance] must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' Retirement *Page 5 System of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id.
In Rhode Island, however, "[o]ur process of statutory construction further involves a `practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency.'" Kells v. Town of Lincoln, 874 A.2d 204, 212 (R.I. 2005) (quoting Montaquila v. St. Cyr, 433 A.2d 206, 214 (R.I. 1981)). Finally, "[t]his Court will not construe a statute [or an ordinance] to reach an absurd result." State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quotingKaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)).
The Ordinance provisions at issue in this case are §§ 60-393 and 60-395. Section 60-393, entitled "Disability retirement benefits," provides in pertinent part:
 "a) General eligibility. A member who has completed ten years of vesting service . . . and is totally disabled as defined in subsection (b) of this section prior to normal retirement age, will be retired upon application to the retirement board and will receive a disability retirement pension payable for life, except as specified elsewhere in this section.
 (b) Total Disability defined. A member will be considered totally disabled if the retirement board certifies that he or she is in receipt of social security benefits." (Emphasis added.)
Use of the word "will" is commonly recognized as "having the mandatory sense of `shall' or `must'. . . ." Summit Packaging Sys. v. Kenyon Kenyon, 273 F.3d 9, 12 (1st Cir. 2001) ( (citing Black's Law Dictionary 1102 (6th ed. 1991)); see also United States v. Benjamin, 138 F.3d 1069,1074 (6th Cir. 1998) ("The use of `will' [in a plea agreement] indicate[d] that the parties did not intend that the government retain its *Page 6 
discretion."); Cantrell v. Rumman, 2005 U.S. Dist. LEXIS 9512, at *19-20 (N.D. Ill. E. Div. Feb 9, 2005) (observing that the word "will" is mandatory in nature). Accordingly, like the word "shall," the word "will" should "not be given a permissive meaning where it is used with reference to any right or benefit to anyone, and the right and benefit depends upon giving a mandatory meaning to the word." Dunahee v. ChenoaWelding and Fabrication, Inc., 652 N.E.2d 438, 442 (Ill.App. 4th Dist.1995); see also Brown v. Amaral, 460 A.2d 7 (R.I. 1983) ("The word `shall' usually connotes the imperative and contemplates the imposition of a duty.")
Thus, according to the plain and ordinary meaning of Section 60-393, if a vested member of the retirement system can demonstrate to the Board that he or she is in receipt of social security benefits, then the Boardmust authorize the payment of disability retirement benefits to that person upon application. See Cantrell, 2005 U.S. Dist. LEXIS 9512, at *19-20 ("The mandatory nature of the word `will' indicates that the government official must grant a permit. . . .") This conclusion is further buttressed by the language of §§ 60-151 and 60-152 of the Ordinance concerning disability retirement to members with creditable service.
Section 60-151 provides in pertinent part:
 "If a member who has completed ten years of creditable service . . . and is totally disabled as defined by 60-152, prior to his/her normal retirement date, he/she will be retired upon written application to the retirement board by him/her or by his/her appointing authority and he/she will receive a disability retirement pension."
Although the latter provision is similar to § 60-393, the definition of permanent disability is very different. Section 60-152 provides: "A member will be considered totally disabled if the medical board certifies that he/she is wholly prevented from engaging in *Page 7 
any occupation for wage or profit and the retirement board approves his/her application for benefits."
It is clear from the foregoing that § 60-152 grants the Board discretion to accept or reject a written application for disability retirement, unlike the mandatory language contained in § 60-393(b).See Rubano v. DiCenzo, 759 A.2d 959, 969 (R.I. 2000) (observing as significant a situation where "the Legislature demonstrated that it knew how to adopt appropriate limiting language . . . [but] chose not to include such limiting language. . . .") Similarly, in the instant matter, the City Council demonstrated that it knew how to grant the Board discretion to reject applications for disability retirement (see § 60-152 of the Ordinance), but chose not to give the Board the same discretion to reject applications for disability benefits from vested members who are in receipt of social security benefits.See § 60-393 of the Ordinance.
Bellucci asserts that he is entitled to disability retirement benefits by operation of law. See Rossi v. Employees' Retirement System,895 A.2d 106, 111 (R.I. 2006) (discussing a claimed "entitlement" to a disability pension); In the Matter of Almeida, 611 A.2d 1375, 1385 (R.I. 1992) ("The right to deferred compensation[,] [otherwise known as a pension benefit, vests upon meeting the terms of employment, but that vesting is subject to divestment because it is conditioned on continued honorable and faithful service.")
The Board maintains that Bellucci is not eligible to receive disability retirement benefits because he did not apply for social security benefits until after his termination *Page 8 
date. Instead, it asserts that Bellucci only is eligible to receive benefits pursuant to § 60-395 of the Ordinance.[2]
Determination of eligibility for social security disability benefits involves a five-step process. See Dorf v. Bowen, 794 F.2d 896, 899 (3rd Cir. 1986). That process is succinctly set out in Dorf:
 "In order to establish eligibility for Social Security disability insurance, a claimant has the burden of demonstrating that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.
 To determine whether a claimant is entitled to disability benefits, the Secretary applies a sequential five-step evaluation process pursuant to 20 C.F.R. § 404.1520. Under that five step analysis, the Secretary determines first whether an individual is currently engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If the claimant is found not to be engaged in substantial gainful activity, the Secretary will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the Secretary determines that he suffers from a severe impairment, the Secretary will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub- *Page 9 
part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d).
 If the claimant meets or equals the list of impairments, he will be found disabled. If he does not, the Secretary must determine if the claimant is capable of performing his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the Secretary determines that the claimant is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f). The claimant bears the initial burden of establishing that he is incapable of performing his past relevant work due to a medically determinable physical or mental impairment. Dorf, 794 F.2d at 899-900
(citing Green v. Schweiker, 749 F.2d 1066 (3d Cir. 1984)).
In the present case, the Administrative Law Judge considered Bellucci's application and made the following findings:
 "1. The claimant has not engaged in gainful activity since June 12, 2000.
 2. The claimant's personality disorder is a `medically determinable severe impairment' within the meaning of the regulations.
 3. The severity of the claimant's impairment meets the requirements of Section 12.08, Appendix 1, Subpart P, Regulations No. 4, and has precluded him from working for at least 12 continuous months.
 4. There is evidence in the record indicating that the claimant has received worker's compensation payments since the alleged onset date.[3]
 5. The claimant has been under a disability, as defined in the Social Security Act, as amended since June 12, 2000 (20 CFR § 404.1520(d)." *Page 10 
Given the five step process for approval of social security disability benefits, coupled with the requirements that an individual seeking social security disability benefits must have a disorder that has lasted or is expected to last at least twelve months and must not be engaged in substantial gainful employment, it appears that had Bellucci applied for social security disability benefits while he still was employed by the City, he probably would not have qualified.
It is undisputed that Bellucci is a vested member of the retirement system with over ten years of vesting service. It also is undisputed that he is in receipt of social security benefits. Furthermore, there is no evidence in the record to suggest that Bellucci was terminated from his employment due to dishonorable or unfaithful service. The fact that the Administrative Law Judge found Bellucci to be disabled from June 12, 2000, demonstrates that he actually was disabled while he still was employed by the City; thus, his eligibility for benefits vested while he still was employed by the City. Consequently, when Bellucci submitted the decision of the Administrative Law Judge to the Board, the Board was required to grant his vested retirement disability benefits pursuant to § 60-393 of the Ordinance.[4]
 The Settlement Agreement and Release
The Board next asserts that Bellucci's claim is barred by the Release executed between Bellucci and the City. In response, Bellucci argues that the Release is specifically limited to (1) worker's compensation, (2) termination of employment with the City, and (3) the right to employment or re-employment with the City. Additionally, Bellucci argues that the Release is not dispositive of his right to bring a claim against the *Page 11 
Board for disability retirement benefits because (1) the Release does not mention the word `pension;' (2) within two weeks upon signing the Release, the City's Personnel Director forwarded a letter to Bellucci explaining that he is entitled either to an immediate disposition of his pension contributions or a subsequent pension upon reaching retirement age; and (3) the Board was not a party to the Release.[5]
The interpretation of a contract is a question of law. Haydon v.Stamas, 900 A.2d 1104, 1110 (R.I. 2006). In so interpreting, this Court must view the "contract in its entirety, assigning to its terms their plain and ordinary meanings as the manifestation of the parties' intent." Id. In situations where "the contract terms are clear and unambiguous, judicial construction is at an end[,] for the terms will be applied as written." Id. In other words, "where . . . the document is unambiguous, the language of the release itself is controlling in determining the intent of the parties and `governs the legal consequences of its provisions.'" Nelson v. Ptaszek, 505 A.2d 1141, 1143
(R.I. 1986) (quoting Dudzik v. Leesona Corp., 473 A.2d 762, 765 (R.I. 1984)).
It is axiomatic that "a court must find that a contract is ambiguous before [it] can exercise judicial construction of a document." W.P.Associates v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). Furthermore, "[a]n agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." Id.
The Release at issue in this case provides in pertinent part:
 "1. The Union and Mr. Bellucci agree to permanently withdraw with prejudice the grievances and demands for arbitration . . . related to the termination of Mr. Bellucci's leave with the City. Mr. Bellucci also agrees to permanently withdraw with prejudice his pending claim of *Page 12 
appeal to the Worker's Compensation Appellate Division and to forever terminate the claim for workers' compensation benefits he filed against the City.
 2. The City shall pay to Mr. Bellucci a lump-sum payment of $27,000.00. . . . within thirty (30) calendar days after receiving written confirmation of the withdrawals set forth in paragraph 1 above.
 3. Subject to the City's compliance with this agreement, the Union and Mr. Bellucci agree that the City has fully satisfied any and all obligations to Mr. Bellucci regarding his employment and termination from employment with the City. In consideration of the foregoing, the Union and Mr. Bellucci hereby release and forever discharge the City, its present and former officials, employees, agents, successors and assigns from any and all liabilities, causes of action, debts, claims and demands both in law and in equity known or unknown, fixed or contingent, which either may have or claim to have based upon or in any way related to Mr. Bellucci's employment or termination of employment with the City and hereby covenant not to file a lawsuit or charge to assert such claims. This includes but is not limited to claims arising under federal, state or local laws prohibiting employment discrimination or claims growing out of any legal restrictions on the City's right to terminate its employees. Both the Union and Mr. Bellucci acknowledge that there are no other suits or claims filed and pending against the City or any of its employees other than the arbitrations and workers' compensation appeal mentioned above regarding in any way Mr. Bellucci's employment or termination of employment with the City and both agree not to file any suits, charges or other claims against the City or any of its employees regarding such matters." SeeSettlement Agreement and Release.
Although the Release operates as a bar to "any and all" claims made by Bellucci against the City "based upon" his prior employment with the City, the present action is not a claim within the meaning of the Release; rather, it is an attempt by Bellucci to recover a vested entitlement to retirement disability benefits. The fact that the Board admits Bellucci is entitled to retirement benefits pursuant to § 60-395 supports the *Page 13 
conclusion that it does not consider such benefits to be a claim that is barred by the Release. Furthermore the vested entitlement at issue in this case ripened before the Release was signed because Bellucci's disability manifested itself on June 12, 2000; thus, the Board was required by operation of law to pay disability benefits once it became aware that Bellucci was receiving social security disability benefits. For this reason also, Bellucci's application for such benefits does not constitute a claim for purposes of the Release. Accordingly, this Court finds that the Release does not act as a bar to Bellucci's retirement disability benefits.
 Conclusion
After careful review, and in accordance with this decision, this Court declares that Bellucci is entitled to benefits pursuant to Chapter 60 of the City of Warwick's Code of Ordinances entitled "Retirement System."
Counsel shall submit an appropriate order consistent with this decision.
[1] General Laws 1956 § 9-30-2 of the Uniform Declaratory Judgments Act confers jurisdiction on the Superior Court to determine Bellucci's rights under the Plan. It provides: "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Section 9-30-2. It must be remembered that a declaratory judgment proceeding "is neither an action at law nor a suit in equity but a novel statutory proceeding. . . ." Newport Amusement Co. v. Maher, 92 R.I. 51,53, 166 A.2d 216, 217 (1960). Furthermore, it is well settled that "[t]his statute gives a broad grant of jurisdiction to the Superior Court to determine the rights of any person that may arise under a statute," or in this case a municipal ordinance, "not in its appellate capacity but as part of its original jurisdiction." See Canario v.Culhane, 752 A.2d 476, 479 (R.I. 2000).
[2] Section 60-295 provides in pertinent part:
 "(a) Lump sum refund. Any member who terminates employment . . . prior to becoming eligible for benefits under 60-391 [normal retirement benefits], 60-392 [early retirement benefits] or 60-393 [disability retirement benefits] shall be paid his or her accumulated contributions in one lump sum within one year after such employee terminates employment. . . ."
 (b) Vested termination. If the member has completed ten years of vesting service . . . at the termination, he or she may elect to receive, in lieu of benefits under subsection (a) of this section, a deferred pension payable at normal retirement age . . . [or] elect to receive benefits at his or her early retirement age reduced for early commencement. . . ."
[3] Bellucci actually did not qualify for Workers' Compensation because his personality disorder was not work-related. However, whether or not an individual receives Workers' Compensation has no bearing on a finding of disability for social security disability purposes. Consequently, the Administrative Law Judge's erroneous finding on this issue constituted harmless error.
[4] Considering that Bellucci's benefits vested before his termination from employment, this Court finds § 60-295 is inapplicable.See supra note 3.
[5] The latter assertion is unavailing. Although the Board was not a named party to the Release, the broad language stating that Bellucci "discharge[s] the City, its present and former officials, employees, agents, successors, and assigns" would include the Board.